

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

---

|  |  |  |
|---|---|---|
| STATE OF ALABAMA, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 4:22-cv-00418-CLM |
| | ) | |
| ALEJANDRO MAYORKAS, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

BACKGROUND ...................................................................................2

I.    Statutory Framework ...................................................................2

II.   The September Guidance.............................................................4

III.  Litigation History.........................................................................6

LEGAL STANDARD.............................................................................6

ARGUMENT ........................................................................................7

I.    The States lack Article III standing to sue....................................7

II.   The States' claims fail to clear multiple threshold bars to APA
lawsuits. .....................................................................................12

      1.    *The challenged action is committed to agency discretion by
law.* ................................................................................12

      2.    *The September Guidance is not final agency action subject to
review.* ...........................................................................16

      3.    *Congress has precluded judicial review of these types of
decisions.* ........................................................................17

      4.    *The States do not fall within the relevant zone of interests.*.................19

III.  The States cannot proceed by asserting claims under the Constitution
or the Declaratory Judgment Act................................................19

CONCLUSION .....................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*31 Foster Children v. Bush*,
   329 F.3d 1255 (11th Cir. 2003)...........................................................................11

*Arizona v. Biden*,
   31 F.4th 469 (6th Cir. 2022).......................................................... *passim*

*Arizona v. United States*,
   567 U.S. 387 (2012) ................................................................. 1, 2, 14

*Arizona v. U.S. Sep't of Homeland Sec.*,
   2021 WL 2787930, No. PHX-SRB (June 30, 2021)...........................................15

*Ashcroft v. Iqbal*,
   556 U. S. 662 (2009) ..........................................................................6

*Ayuda, Inc. v. Reno*,
   7 F.3d 246 (D.C. Cir. 1993)..................................................................18

*Bennett v. Spear*,
   520 U.S. 154 (1997) ...........................................................................16

*Block v. Cmty. Nutrition Inst.*,
   467 U.S. 340 (1984) ................................................................ 18, 19

*Burton v. City of Belle Glade*,
   178 F.3d 1175 (11th Cir. 1999)...............................................................12

*California v. Texas*,
   141 S. Ct. 2104 (2021)........................................................................11

*Charlton Mem'l Hosp. v. Sullivan*,
   816 F. Supp. 50 (D. Mass. 1993).............................................................20

*Chiles v. Thornburgh*,
   865 F.2d 1197 (11th Cir. 1989)...............................................................10

*Crane v. Johnson*,
   783 F.3d 244 (5th Cir. 2015)..................................................................9

*Dalton v. Specter*,
    511 U.S. 462 (1994) ........................................................................20

*Florida v. United States*,
    540 F. Supp. 3d 1144 (M.D. Fla. 2021) *vacated*, No. 21-11715,
    2021 WL 5910702 (11th Cir. Dec. 14, 2021) ........................................ 1, 15, 16

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation*
    *Tr.for S. Cal.*,
    463 U.S. 1 (1983) ........................................................................20

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ....................................................................13

*Hernandez-Avalos v. INS*,
    50 F.3d 842 (10th Cir. 1995) ........................................................19

*Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*,
    58 F. Supp. 3d 1191 (D.N.M. 2014) ................................................20

*Jennings v. Rodriguez*,
    138 S. Ct. 830 (2018) ..................................................................3, 4

*Lawrence v. Dunbar*,
    919 F.2d 1525 (11th Cir. 1990) ........................................................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ....................................................................19

*Linda R.S. v. Richard D.*,
    410 U.S. 614 (1973) ......................................................................8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................ 6, 10, 11

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
    138 S. Ct. 1461 (2018) ....................................................................8

*Nat'l Parks Conservation Ass'n v. Norton*,
    324 F.3d 1229 (11th Cir. 2003) ......................................................17

*New York v. United States*,
    505 U.S. 144 (1992) ......................................................................8

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
   297 F.3d 1182 (11th Cir. 2002) ..............................................................8

*Renne v. Geary*,
   501 U.S. 312 (1991) ...............................................................................6

*Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"),
   525 U.S. 471 (1999) ................................................................. *passim*

*Skelly Oil Co. v. Phillips Petroleum Co.*,
   339 U.S. 667 (1950) .............................................................................20

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ...............................................................................7

*Sure-Tan, Inc. v. NLRB*,
   467 U.S. 883 (1984) ...............................................................................8

*Texas v. United States*,
   14 F.4th 332 (5th Cir.) *vacated*, 24 F.4th 407 (5th Cir. 2021) ...........15

*Texas v. United States*,
   No. 6:21-CV-00016, 2022 WL 2109204 (S.D. Tex. June 10, 2022) .................15

*Thompson v. N. Am. Stainless, LP*,
   562 U.S. 170 (2011) .............................................................................19

*Town of Castle Rock v. Gonzales*,
   545 U.S. 748 (2005) ...................................................................... 13, 14

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
   578 U.S. 590 (2016) .............................................................................16

*United States v. Fausto*,
   484 U.S. 439 (1988) .............................................................................18

*Wayte v. United States*,
   470 U.S. 598 (1985) .............................................................................13

*Whitmore v. Ark.*,
   495 U.S. 149, 158 (1990) .......................................................................8

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ...............................................................20

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ...............................................................4

**Statutes**

5 U.S.C. § 701 ........................................................... 12, 13, 17

5 U.S.C. § 702 ...............................................................19

5 U.S.C. § 704 ........................................................... 12, 16

5 U.S.C. § 706 ........................................................... 12, 20

6 U.S.C. § 202 ........................................................... 1, 3, 14, 16

8 U.S.C. § 1187 ...............................................................2

8 U.S.C. § 1225 ...............................................................2

8 U.S.C. § 1226 ........................................................... 1, 3, 4, 18

8 U.S.C. § 1228 ...............................................................2

8 U.S.C. § 1229 ........................................................... 2, 3, 18

8 U.S.C. § 1231 ........................................................... 2, 3, 4,18

8 U.S.C. § 1252 ........................................................... 3, 18, 19

28 U.S.C. §§ 2201-02...............................................................20

**Federal Rules**

Fed. R. Civ. P. 12 ...............................................................1

**Federal Regulations**

8 C.F.R. § 239.1 ...............................................................2

8 C.F.R. § 1003.1 ...............................................................3

8 C.F.R. § 1003.6 ...............................................................3

8 C.F.R. § 1208.31 ................................................................2

8 C.F.R. § 1240.12 ................................................................3

8 C.F.R. § 1240.15 ................................................................3

# INTRODUCTION

The Department of Homeland Security ("DHS") has adopted immigration enforcement priorities to guide the "broad discretion exercised by immigration officials," which is a "principal feature" of the federal immigration system. *Arizona v. United States*, 567 U.S. 387, 396 (2012). The priorities "memorandum provides guidance for the apprehension and removal of noncitizens" to focus the agency's limited enforcement resources on those noncitizens who pose the greatest risk to national security, border security, and public safety. Guidelines for the Enforcement of Civil Immigration Law (Sept. 30, 2021) ("September Guidance"), ECF No. 1-1.

Alabama, Georgia, and Florida revive essentially the same arguments that Florida has already lost in an earlier lawsuit challenging DHS's interim enforcement priorities. *Florida v. United States*, 540 F. Supp. 3d 1144, 1157 (M.D. Fla. 2021), *vacated*, No. 21-11715, 2021 WL 5910702 (11th Cir. Dec. 14, 2021).[1] At bottom, the States ask this Court to ignore the Secretary of Homeland Security's express statutory authority to establish "national immigration enforcement policies and priorities," 6 U.S.C. § 202(5), and to void the Guidance based on an extraordinary interpretation of two provisions of the Immigration and Nationality Act ("INA")— 8 U.S.C. §§ 1226(c) and 1231(a). The States' interpretation, if accepted, would mean that every administration has violated those provisions since their enactment in 1996.

---

[1] The 11th Circuit vacated the district court's opinion after Florida dismissed its appeal as moot.

The Complaint fails to clear multiple threshold hurdles and thus should be dismissed. First, the States fail to plausibly allege an injury traceable to the Guidance and redressable by this Court. Second, the Administrative Procedure Act ("APA") bars the States' claims in multiple ways, including because the Guidance is not final agency action and because immigration enforcement prioritization is committed to agency discretion by law, just as the *Florida* court found in dismissing Florida's earlier request for injunctive relief. The Court should dismiss the Complaint.

## BACKGROUND

### I. Statutory Framework

The INA establishes the framework for arresting, detaining, and removing noncitizens who are unlawfully present or otherwise removable from the United States. A "principal feature of th[is] removal system is the broad discretion exercised by immigration officials." *Arizona*, 567 U.S. at 396.[2]

As relevant here, the removal process typically begins when DHS, in its discretion, initiates a removal proceeding against a noncitizen. *See* 8 U.S.C. § 1229(a); 8 C.F.R. § 239.1; *see also, e.g.*, 8 U.S.C. §§ 1225(b), 1228(b), 1187(b)(2), 1231(a)(5); 8 C.F.R. § 1208.31(e) (instances of more limited proceedings in specific circumstances). DHS has discretion to choose which charges of removability to pursue. *See* 8 U.S.C. § 1229a(a)(2). If the noncitizen is placed into proceedings

---

[2] Internal quotation marks and citations are omitted throughout this brief, unless otherwise stated.

before an immigration judge ("IJ"), the IJ ultimately determines whether the noncitizen is removable on the charged grounds, and if so, whether to enter an order of removal. *See* 8 U.S.C. § 1229a(a); 8 C.F.R. § 1240.12. A noncitizen subject to an IJ's removal order may file an appeal before the Board of Immigration Appeals ("BIA"), 8 C.F.R. §§ 1003.1(b), 1240.15, and the removal order is stayed pending the appeal, 8 C.F.R. § 1003.6(a). If the BIA dismisses the appeal, the noncitizen may petition for review in a court of appeals, and request a further stay of removal pending review. 8 U.S.C. § 1252(a)(5). Once an order of removal is final, *see id.* § 1101(a)(47)(B), and absent a stay, the noncitizen is subject to removal, *see id.* §§ 1231(a)(1)(A), (a)(B)(ii).

"At each stage" of this removal process, "the Executive has discretion to abandon the endeavor." *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 483 (1999). Congress charged the Secretary with establishing "national immigration enforcement policies and priorities," 6 U.S.C. § 202(5), to guide that discretion.

This case concerns 8 U.S.C. §§ 1226 and 1231. Section 1226 "governs the process of arresting and detaining" noncitizens and "distinguishes between two different categories of aliens." *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018). Section 1226(a) generally authorizes the arrest and detention of noncitizens, pending a determination on removal from the United States. Section 1226(c) specifically

relates to noncitizens "who fall[] into one of several enumerated categories involving criminal offenses and terrorist activities," *id.* at 837, and provides that DHS "shall take" these noncitizens "into custody . . . when [they are] released[]" from criminal confinement. 8 U.S.C. § 1226(c)(1). Noncitizens detained under this provision, unlike those held under § 1226(a), are ineligible for release on bond. Section 1226(c)(2) provides that once a covered noncitizen has been taken into custody and removal proceedings are ongoing, he may be released "only if" a specified condition not relevant here is satisfied. 8 U.S.C. § 1226(c)(2).

Once a removal order becomes final, § 1231 sets out DHS's detention and removal authority. Section 1231(a) sets a "removal period" of 90 days. 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(2) provides that DHS "shall detain" noncitizens during the removal period and that, "[u]nder no circumstance" shall DHS release a limited set of noncitizens during that period. *Id.* § 1231(a)(2) (cross-referencing other sections of the INA for those who "under no circumstances" shall be released).[3]

## II.  The September Guidance

The September Guidance covers "the apprehension and removal of noncitizens"; it does not address detention decisions, that is, whether to release

---

[3] Congress, however, "doubt[ed]" that "all reasonably foreseeable removals could be accomplished" within the removal period. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Section 1231 permits, but does not require, detention and removal after that period. *Id.*; *see* 8 U.S.C. §§ 1231(a)(1)(C), (a)(6). Otherwise, a noncitizen subject to a final order of removal may be released on an order of supervision. *Id.* § 1231(a)(3).

individuals already in DHS custody. Sept. Guidance at 1. The Guidance underscores that it is "well established in the law that federal government officials have broad discretion to decide who should be subject to arrest, detainers, removal proceedings, and the execution of removal orders," and that DHS lacks the resources to apprehend or remove all of the 11 million potentially removable noncitizens in the country. *Id.* at 2. The Guidance provides that DHS officials should prioritize the agency's limited enforcement resources on threats to national security, public safety, and border security. *Id*. at 3-4. But the Guidance leaves "the exercise of prosecutorial discretion to [DHS officials'] judgment," *id*. at 5-6, while emphasizing that the Guidance confers no "right or benefit," *id*. at 7.

In contrast to DHS's interim guidance, the September Guidance avoids "bright lines or categories" and the Guidance instead "requires an assessment of the individual and the totality of the facts and circumstances." *Id*. at 3. With this as the backdrop, the September Guidance then includes a non-exclusive list of aggravating factors (*e.g.*, "the gravity of the offense of conviction and the sentence imposed[]" or "the sophistication of the criminal offense[]") and mitigating factors (*e.g.*, "military . . . service" or "time since an offense and evidence of rehabilitation[]") for an officer to consider when determining whether enforcement action against any particular noncitizen is warranted. *Id*. at 3-4. In emphasizing officers' discretion, the September Guidance notes that "[t]he overriding question is whether the noncitizen

poses a current threat to public safety." *Id*. at 4. For border security, the September Guidance underscores that "personnel must evaluate the individual and the totality of the facts and circumstances and exercise their judgment accordingly." *Id.*

## III. Litigation History

The States' Complaint asserts claims under the APA and purports to assert claims under the INA and the Constitution.

## LEGAL STANDARD

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, *id.* 12(b)(6). Courts should "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991). A plaintiff must establish a court's jurisdiction through sufficient allegations to survive a motion to dismiss under Rule 12(b)(1). *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "Facial attacks on the complaint require the court merely to look and see if the plaintiff has successfully alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009). Conclusory statements and legal conclusions are not presumed to be true. *Id.*

## ARGUMENT

The Court should dismiss the States' claims against the September Guidance. First, the Court lacks jurisdiction, because the States cannot establish Article III standing. Second, multiple threshold requirements of the APA bar the States' claims. Finally, the States cannot invoke the Declaratory Judgment Act or the Constitution for the purpose of evading statutory bars to jurisdiction.

## I.     The States lack Article III standing to sue.

The States lack standing. In alleging injury, the States baldly speculate that the September Guidance will, through a series of hypothetical events, eventually result in higher costs to the States arising from the presence of noncitizens that, absent the September Guidance, would not be in the States. *See* Compl. ¶ 64 (alleging higher incarceration costs); *id*. ¶ 67 (claiming other ancillary costs related to increased crime); *id*. ¶ 68 (suggesting higher supervised releases costs for criminal noncitizens); *id*. ¶ 69 (asserting a *parens patriae* interest in the safety of their citizens). The States' chain of speculation falls well short of establishing standing.

To establish standing to seek equitable relief, a plaintiff must show that it "is under threat of suffering" an "actual and imminent" injury caused by "the challenged action," and that "a favorable judicial decision will prevent" that injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). The "threatened injury must be certainly impending to constitute injury in fact"; allegations of "possible future injury do not satisfy . . . Art. III." *Whitmore v. Ark.*, 495 U.S. 149, 158 (1990).

"[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

At the outset, suits like this one are inconsistent with our federal system. The Constitution establishes a National Government with the power to act directly on individuals. *See New York v. United States*, 505 U.S. 144, 162-66 (1992); *see also Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1476 (2018). It was to be expected at the time of the Framing, as it is now, that when the federal government takes actions affecting individuals within a State, there may be incidental effects on that State's own actions affecting those same individuals. But the necessary autonomy of the national and state sovereigns, each acting directly upon citizens, is inconsistent with a State having a legally protected interest in avoiding those incidental and derivative effects.

Moreover, the States lack standing because litigants "lack[] a judicially cognizable interest in the prosecution or nonprosecution of another," *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984) (same for "procuring enforcement of the immigration laws"). Nor has the Supreme Court ever permitted a State to end-run that principle by basing a challenge to the federal government's enforcement priorities on indirect and incidental fiscal consequences. The States would have to show not only that the

Guidance "certainly" resulted in more crime in their states, but also that these crimes were necessarily of a nature that imposes some further injury on them specifically. *See Arizona v. Biden*, 31 F.4th 469, 476 (6th Cir. 2022) (doubting that a "federal regulation of individuals through a policy statement that imposes peripheral costs on a State creates a cognizable Article III injury"); *Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015) (finding Mississippi's claim of economic injury speculative).

The States' theory of increased costs resulting from the non-detention of certain noncitizens is sheer speculation not rising to the level of alleging that an injury is "*certainly* impending" or, at the least, traceable, to the September Guidance. As the Sixth Circuit recently explained in staying a preliminary injunction against the September Guidance brought by a different trio of states—Ohio, Montana, and Arizona—"considerable speculation undergirds" the States' worry "that the Guidance will decrease the number of noncitizens detained and removed and will shortchange efforts to detain and remove those convicted of drug crimes and crimes of moral turpitude, all with downstream costs to the States in the form of additional crime and public-welfare costs." *Arizona*, 31 F.4th at 474. So too with these States.

As the Sixth Circuit noted, the September Guidance "does not directly injure the States," because the Guidance "does not regulate the States by telling them what they can or cannot do in their jurisdiction" and "does not purport to preempt any state or local law, whether criminal or otherwise." *Id*. Further, it is "speculative

whether and how the Guidance's prioritization of the apprehension and removal of noncitizens in the three States will injure each of them." *Id*. That is because whether the federal government "decides to remove or detain person A over person B does not establish that it will pursue fewer people, particularly with respect to a Guidance that never *requires* agents to detain some noncitizens over others." *Id*.; *see* Sept. Guidance at 3-4 (prioritizing recently-arrived border crossers in addition to those who pose a threat to national security and public safety). In any event, "[b]ecause the Guidance prioritizes the noncitizens with the greatest risks to public safety, it also is hard to know whether fewer detentions and removals means more injuries to States even on their own terms." *Arizona*, 31 F.4th at 474-75. In the end, any injury is speculative. *Id*. (citing *Lujan*, at, 562–63).

The States cannot rely on a *parens patriae* theory for standing. *Contra* Compl. ¶ 69. "[A] state does not have standing as *parens patriae* to bring an action against the federal government to vindicate the rights of its citizens." *Chiles v. Thornburgh,* 865 F.2d 1197, 1209 (11th Cir. 1989).

Further, the States' theory has a traceability problem, because it depends on the independent decisions of two sets of third parties. "[W]here a causal relation between injury and challenged action depends upon the decision of an independent third party" standing is "ordinarily substantially more difficult to establish." *California v. Texas*, 141 S. Ct. 2104, 2117 (2021). As the Sixth Circuit noted, the

September Guidance relies on the discretion and judgment of agency personnel, and so the States' "asserted injuries also 'hinge on the response' of individual immigration officers to the Guidance." *Arizona*, 31 F.4th at 475 (citing *Lujan*, 504 U.S. at 562). "If an injury turns on choices made by others and if those choices permit considerable discretion, the States have a burden to show those choices have been or will be made." *Id.* (citing *Lujan*, 504 U.S. at 562)*.* And, "the premise that the Guidance has coincided with a fall in immigration enforcement overall does not lead to the conclusion that the Guidance is the culprit, let alone the challenged portion of the Guidance." *Id*. ("[o]ther explanations exist"). Moreover, the States' theory depends on the intervening, independent decisions of noncitizens to commit crimes in the Plaintiff States, which further breaks the causal chain. *31 Foster Children v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003) ("[F]uture injury that depends on . . . the . . . unauthorized acts of a third party is too speculative" for standing.).

Finally, the States' requested relief would not redress any alleged injury. The States seek to enjoin or vacate the September Guidance, without specifying an alternate mechanism for DHS to prioritize its limited resources. *See* Sept. Guidance at 2 (DHS lacks "the resources to apprehend and seek the removal of" all 11 million noncitizens present in the United States); Compl., Prayer for Relief.[4] In response to

_____

[4] The States also ask for an affirmative injunction under 5 U.S.C. § 706 to "[c]ompel the agency to comply with §§ 1226(c) and 1231(a) pursuant to 5 U.S.C. § 706." Compl., Prayer for Relief (c).

an injunction against, or a vacatur of, the Guidance, Defendants would have to construct a *different* prioritization scheme, and, given the undeniable need to prioritize in some fashion, there is no reason to believe that the subsequent scheme would reduce the States' asserted injuries. *See Arizona*, 31 F.4th at 475.

Accordingly, the States have failed to establish standing.

## II. The States' claims fail to clear multiple threshold bars to APA lawsuits.

Each of four limitations imposed by Congress independently bars the States' claims. First, under the APA, a court cannot review immigration enforcement priorities because such determinations are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Second, the September Guidance is not "final agency action" subject to review under the APA because it does not alter legal rights or obligations. *See* 5 U.S.C. § 704. Third, numerous provisions of the INA narrowly circumscribe the mechanisms and procedures for judicial review of immigration policies and thereby "preclude judicial review" under the APA. *See* 5 U.S.C. § 701(a)(1). Fourth, the States are not within the zone of interests of the INA.

### 1. *The challenged action is committed to agency discretion by law.*

Congress has precluded judicial review of agency action that is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The September Guidance is one

---

But the agency is complying with those provisions. *Arizona*, 31 F.4th at 481. In any event, a follow-the-law injunction is improper. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999).

such agency action. Enforcement and nonenforcement decisions are "decision[s] generally committed to an agency's absolute discretion" because they require the "complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," such as "whether agency resources are best spent on this violation or another," "whether the particular enforcement action requested best fits the agency's overall policies," and "whether the agency has enough resources to undertake the action at all." *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *see also Wayte v. United States*, 470 U.S. 598, 607 (1985) (the Executive's "broad discretion" in enforcement decisions is "particularly ill-suited to judicial review."). The reasons for judicial modesty in this sphere "are greatly magnified in the deportation context." *AADC*, 525 U.S. at 490.

The Complaint suggests that §§ 1226(c) and 1231(a) displace this presumption by using the word "shall." The argument fails because the word "shall" does not eliminate immigration officials' discretion. It is black letter law that the "deep-rooted nature of law-enforcement discretion" persists "even in the presence of seemingly mandatory legislative commands." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 761 (2005). Thus, in *Castle Rock*, a statute provided that law enforcement "shall arrest . . . or . . . seek a warrant" for the arrest of any violator of a restraining order, but the Supreme Court rejected the notion this imposed a mandatory duty because to be "a true mandate of police action would require some

stronger indication" of legislative intent than present there. *Id.*

So too here. Nothing provides the "stronger indication" necessary to displace enforcement discretion. Quite the opposite: The statutory and practical context here confirm that neither § 1226(c) nor § 1231(a) impose a broad, judicially enforceable mandate.[5]

Congress constructed a removal system whose "principal feature" is the "broad discretion exercised by immigration officials." *Arizona*, 567 U.S. at 396. That system gives the Executive the discretion to decide "whether it makes sense to pursue removal at all," *id.*, and allows the Executive "to abandon the endeavor" at "each stage" of the process, *AADC*, 525 U.S. at 483. Consistent with that sweeping grant of discretion, Congress empowered the Secretary to establish "national immigration enforcement policies and priorities." 6 U.S.C. § 202(5). Congress desired to "protect[] the Executive's discretion from the courts" in general and from "attempts to impose judicial constraints upon prosecutorial discretion" in particular. *AADC*, 525 U.S. at 486, 485 n.9. It is thus unsurprising that—until 2021—"in the

---

[5] As explained above, there are more narrow, mandatory portions of these provisions, which do not circumscribe the Executive Branch's discretion to determine which noncitizens to arrest or subject to removal proceedings, but instead apply only when the Executive Branch has exercised its discretion to pursue removal and to detain the individual in the first instance. Section 1226(c)(2) prohibits the release of covered noncitizens once they are in custody and in removal proceedings, subject to minor exceptions. The same is true for those pursuant to § 1231(a)(2), which provides that "under no circumstances" shall certain noncitizens be released during the removal period. The September Guidance does not conflict with these mandatory detention requirements. *See Arizona*, 31 F.4th at 481.

quarter century that [IIRIRA]") has been on the books, no court at any level previously has held that sections 1226(c)(1) or 1231(a)(2) eliminate immigration officials' discretion to decide who to arrest or remove." *Texas v. United States*, 14 F.4th 332, 340 (5th Cir.), *vacated*, 24 F.4th 407 (5th Cir. 2021) (en banc).

A majority of courts to consider challenges to DHS's recent immigration enforcement priorities ruled for Defendants because immigration enforcement prioritization is committed to agency discretion by law. *See Arizona*, 31 F.4th at 478 (staying injunction against September Guidance because Defendants were likely to prevail on appeal); *Texas*, 14 F.4th at 340 (similar as to interim guidance); *Florida*, 540 F. Supp. 3d at 1158 (denying preliminary injunction against interim guidance); *Arizona*, 2021 WL 2787930, at *11 (denying preliminary injunction and granting motion to dismiss complaint challenging interim guidance).[6]

In sum, Congress vested the Secretary with broad discretion to set immigration enforcement priorities. 6 U.S.C. § 202(5). The Secretary has exercised

---

[6] A district court recently vacated the September Guidance. *Texas v. United States*, No. 6:21-CV-00016, 2022 WL 2109204 (S.D. Tex. June 10, 2022). Defendants have appealed the order to the Fifth Circuit and respectfully submit to this Court that the analysis of the Sixth Circuit is more persuasive. The district court granted an administrative stay of its decision and Defendants have asked the Fifth Circuit to stay the vacatur pending appeal. Prior to that vacatur, the two courts that reached similar conclusions quickly had their injunctions stayed by unanimous panels of the Courts of Appeals. *See Arizona*, 31 F.4th at 482 (staying injunction); *Texas*, 14 F.4th at 340 (staying injunction against prior DHS enforcement guidance, in relevant part). The panel opinion in *Texas* was vacated by the en banc court the day after DHS rescinded the interim guidance. The *Texas* stay panel for the interim guidance left narrow aspects of the injunction in place that merely restated DHS's practice about release and so had no material effect on DHS operations. *See Arizona*, 31 F.4th at 481 (noting that DHS acknowledges limitations).

that discretion here to focus agency resources on cases that fall within the priority categories, while permitting other enforcement actions when justified by the facts. This Court lacks jurisdiction to review the establishment of enforcement priorities.

2.    *The September Guidance is not final agency action subject to review.*

The States' Complaint should also be dismissed because the September Guidance is not final agency action. Congress has provided that only "final agency action" is subject to judicial review under the APA. 5 U.S.C. § 704. Agency action is "final" only if it both is "the consummation of the agency's decisionmaking process" and also determines "rights or obligations." *Bennett v. Spear*, 520 U.S. 154, 156, 178 (1997); *see U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016). Here, the September Guidance does not determine or alter any individual noncitizen's rights or obligations, nor is it an action "from which legal consequences will flow." *See id*. Indeed, the Sixth Circuit explained that the September Guidance "has the telltale signs of a nonbinding policy statement, not of reviewable agency action" and so was likely not final agency action. *Arizona*, 31 F.4th at 477. Likewise, the *Florida* court found that the agency's prior enforcement guidance did not constitute final agency action. *See Florida*, 540 F. Supp. 3d at 1156-57.

The September Guidance sets out procedures for and the manner in which ICE will take enforcement actions, some of which may result in later "final agency action" subject to review through the INA. The Guidance does not itself change any

person's legal status, confer any legal benefits, or have any legal consequences. It is similar to a prosecutor's policy of focusing on bank robberies—such a policy of course does not make pickpocketing lawful or provide a pickpocket with a defense. Indeed, the September Guidance is explicit that it does not create any "right or benefit, substantive or procedural, enforceable at law." Sept. Guidance at 7.

To be sure, the September Guidance may have downstream consequences. But it is only *legal* consequences that establish finality for purposes of the APA. As the Eleventh Circuit has recognized, "the Supreme Court has defined a nonfinal agency order as one that does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1237 (11th Cir. 2003). That describes this scenario: DHS's immigration enforcement priorities have no immediate effect on individuals or states; any consequences are "contingen[t] of future administrative action." *Id.*

3.  *Congress has precluded judicial review of these types of decisions.*

Where Congress has enacted a "statute[] [that] preclude[s] judicial review," a plaintiff lacks a cause of action under the APA. 5 U.S.C. § 701(a)(1). "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action

involved." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984). A detailed mechanism for review of some claims by some plaintiffs is "strong evidence that Congress intended to preclude [other types of plaintiffs] from obtaining judicial review." *United States v. Fausto*, 484 U.S. 439, 448 (1988).

Consistent with the broad enforcement discretion afforded DHS, Congress enacted "*many* provisions . . . aimed at protecting the Executive's discretion from the courts." *AADC*, 525 U.S. at 486; *see, e.g.*, 8 U.S.C. § 1226(e); *id.* § 1231(h). Where Congress did set out a detailed statutory review scheme under the INA was for noncitizens' claims. *See* 8 U.S.C. § 1252; *id.* § 1229a. That exclusive review scheme precludes statutory claims that do not fall within its parameters. *See, e.g.*, *id.* § 1252(a)(5). The States, of course, make no effort to invoke this statutory review mechanism, and for good reason: it does not offer a means for a *State* to challenge any decision related to removal. *Cf. Ayuda, Inc. v. Reno*, 7 F.3d 246, 250 (D.C. Cir. 1993) (organizational plaintiff could not challenge INS policies "that bear on an alien's" removal). Congress's decision to allow noncitizens, but not sovereign entities, to invoke these review mechanisms is "strong evidence that Congress intended to preclude" sovereign entities "from obtaining judicial review" of removal and detention decisions. *Fausto*, 484 U.S. at 448. Thus, in *Block*, Congress provided a specific review scheme for "dairy handlers" but not for "consumers." 467 U.S. at 346–47. But consumers were not free to then challenge the agency action under the

APA; they could not challenge the agency action at all. *Id.* at 347. Just so here.

    4.    *The States do not fall within the relevant zone of interests.*

Congress required that an APA plaintiff show that it is "aggrieved . . . within the meaning of a relevant statute." 5 U.S.C. § 702. A plaintiff "may not sue unless he falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 177 (2011); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127-28 (2014) ("using traditional tools of statutory interpretation" to decide "whether [the plaintiff] falls within the class of plaintiffs that Congress has authorized to sue" under the statute). As explained above, and consistent with the general principles that third parties do not have a cognizable interest in the removal of a noncitizen, the INA provides for judicial review only at the behest of noncitizens directly affected and evinces an intent not to allow suits by third parties challenging DHS's enforcement policies. *See* 8 U.S.C. § 1252(a)(5), (b)(9); *see also Hernandez-Avalos v. INS*, 50 F.3d 842, 844 (10th Cir. 1995).

## III. The States cannot proceed by asserting claims under the Constitution or the Declaratory Judgment Act.

The States also purport to bring claims directly under the Constitution and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. *See* Compl. ¶¶ 90-93. But all of the States' claims may be brought, if at all, only pursuant to the APA. The States' reliance on *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), to assert

a claim directly under the Constitution is frivolous. Compl. ¶ 91. An allegation that the Executive has exceeded its statutory authority does not mean that a non-statutory cause of action exists. *Dalton v. Specter*, 511 U.S. 462, 473 (1994) (*Youngstown* "cannot be read for the proposition that an action taken by the President in excess of his statutory authority necessarily violates the Constitution.").[7]

Likewise, "[t]he operation of the Declaratory Judgment Act is procedural only." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 15 (1983). The Act "enlarged the range of remedies available in the federal courts," but it did not create a cause of action, or a new right, to seek those remedies. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

## CONCLUSION

For these reasons, the Court should dismiss the States' Complaint.

Dated: June 21, 2022                    Respectfully submitted,

---

[7] Judicial review under the APA expressly includes claims that agency action is "contrary to constitutional right [or] power." 5 U.S.C. § 706(2)(B). The States may not plead their way around the fundamental principles governing review of agency action by relying on constitutional arguments. *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1232 (D.N.M. 2014); *Charlton Mem'l Hosp. v. Sullivan*, 816 F. Supp. 50, 51 (D. Mass. 1993).

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Brian Rosen-Shaud*
BRIAN C. ROSEN-SHAUD
ME Bar No. 006018
Trial Attorney
ADAM D. KIRSCHNER
IL Bar. No. 6286601
Senior Trial Counsel
MICHAEL F. KNAPP
CA Bar No. 314104
KUNTAL CHOLERA
DC Bar No. 1031523
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 305-7667
Fax: (202) 616-8460
Email: Brian.C.Rosen-Shaud@usdoj.gov
         Adam.Kirschner@usdoj.gov
         Michael.F.Knapp@usdoj.gov
         Kuntal.Cholera@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, D.C. 20044

Courier Address
1100 L Street NW
Washington, D.C. 20005

EREZ REUVENI
CA Bar No. 264124
Assistant Director
U.S. Department of Justice
Civil Division, Office of Immigration
Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
202-307-4293 (telephone)

Email: Erez.R.Reuveni@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed

electronically (via CM/ECF) on June 21, 2022.

*/s/ Brian Rosen-Shaud*
BRIAN C. ROSEN-SHAUD